**CARL E.G. ARNOLD, ESQ.**
Nevada Bar No. 8358
**CEGA LAW GROUP**
1771 E Flamingo Rd #211B
Las Vegas, NV 89119
T (702) 358-1138
F (702) 253-6997
carl@cegalawgroup.com
*Attorney for Plaintiff*
*Brandy Hood*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

BRANDY HOOD,
              Plaintiff,

v.

CITY OF NORTH LAS VEGAS,
a municipal entity; **OFFICER
NIMI ISAAC,** individually and
in his official capacity; **DOE
OFFICERS I–X,** individually
and in their official capacities;
**ROE SUPERVISORS I–X,**
              Defendants.
_____/

Case No.: _____

**JURY TRIAL DEMANDED**

**CIVIL RIGHTS COMPLAINT FOR DAMAGES**

    This Civil Rights action complains of violations of the Plaintiff, BRANDY HOOD'S United States and Nevada Constitutional rights by the Defendants and for the compensation of said violations and damages pursuant to 42 U.S.C. §1983 and Nevada law.

**I.**

**JURISDICTION & VENUE**

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

1

2. Jurisdiction is proper under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) because these claims are questions of Federal Law, transpired in Las Vegas, Nevada, and the sum of damages are greater than $75,000.00.

3. Supplemental jurisdiction over state law claims is proper under 28 U.S.C. § 1367.

4. Venue is proper in this District under 28 U.S.C. § 1391(b), as the events occurred in Clark County, Nevada.

## II.

## **PARTIES**

5. Plaintiff BRANDY HOOD ("HOOD") is a resident of Clark County, Nevada.

6. Defendant CITY OF NORTH LAS VEGAS ("CNLV") is a municipal entity responsible for the North Las Vegas Police Department ("NLVPD") and the North Las Vegas Detention Center. CNLV is a political subdivision of the State of Nevada and a "person" within the meaning of 42 U.S.C. §1983. At all relevant times, CNLV was responsible for the hiring, training, supervision, discipline, and conduct of its officers, including Defendant ISAAC. CNLV maintained policies, customs, and practices that were the moving force behind the constitutional violations alleged herein. CNLV is responsible for the medical-care policies, training, and supervision of personnel assigned to the North Las Vegas Detention Center, including the treatment of pregnant detainees. CNLV is sued in its official capacity for injunctive and declaratory relief pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

7. Defendant OFFICER NIMI ISAAC is and was at all times herein employed by the CNLV and NLVPD as a Police Officer and Corrections Officer and was acting in these dual roles at all times herein and was acting under color of law and within the scope of his employment at all relevant times herein. He is sued in both his individual and official capacities.

2

8.  DOE OFFICERS I–X are officers who participated in, assisted with, or failed to intervene in the assault.

9.  ROE SUPERVISORS I–X are supervisory officials responsible for training, supervision, and discipline.

### III.

### NATURE OF LIABILITY

10. Defendants, and each of them, are being sued in their individual and official capacities pursuant to 42 U.S.C. §1983 unless otherwise stated.

11. Defendants, and each of them, are "persons" for the purpose of 42 U.S.C. §1983.

12. Defendants, and each of them, acted under color of State Law in their individual and official capacities, in furtherance of State Law, to deprive HOOD of her United States rights as more fully described below.

### IV.

### INTRODUCTION

13. This civil rights action arises from the violent assault, racial abuse, threats, and deliberate denial of medical care inflicted upon Plaintiff Brandy Hood—a pregnant pretrial detainee—while in the custody of the North Las Vegas Detention Center on August 31, 2025.

14. Despite Plaintiff's repeated statements that she was pregnant, experiencing abdominal pain, and needed medical attention, Defendant Officer Nimi Isaac and other officers escalated a minor verbal exchange into a violent use of force. Officers slammed Plaintiff, forced her to her knees and stomach, drove a knee into her back, pulled her handcuffed arms above her head, twisted her leg behind her, and threatened to shoot her if she moved.

15. Plaintiff began bleeding in custody and repeatedly requested medical care and sanitary pads. Officers denied her medical evaluation, mocked her, retaliated against her for calling the

3

suicide hotline and attempting to contact Metro, and refused to summon a supervisor. Plaintiff was released the next morning without ever being examined by medical staff.

16. Within hours of release, Plaintiff presented to the emergency department at Valley Hospital, where she was diagnosed with "Threatened Abortion in Early Pregnancy." Her hormone levels had dropped, she was advised she was likely miscarrying, and medical staff documented pregnancy complications consistent with trauma and abdominal pressure.

17. Plaintiff filed a formal complaint with the North Las Vegas Police Department. After a full internal investigation, the Chief of Police sustained the allegations, finding violations of:

18. (1) 3.05.01 – Employee Conduct – SUSTAINED

19. (2) 4.01.05 – De-Escalation – SUSTAINED

20. These findings confirm that Plaintiff's allegations were supported by proper and sufficient evidence.

21. Plaintiff brings this action under 42 U.S.C. § 1983, the Fourteenth Amendment, the First Amendment, the Equal Protection Clause, and Nevada law.

## V.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Arrest and Initial Detention

22. On August 30, 2025, Plaintiff was taken into custody on a minor traffic-related matter and transported to the North Las Vegas Detention Center ("NLVDC").

23. Plaintiff was placed in an unsanitary cell containing old food, used hygiene products, and debris, reflecting inadequate maintenance and supervision within the facility.

### B. Escalation and Racial Harassment by Officer Isaac

24. On August 31, 2025, Plaintiff requested tissue from Defendant Officer Nimi Isaac. Instead of handing it to her, he threw it onto the floor of the cell.

4

25. When Plaintiff asked whether he was Nigerian, Officer Isaac responded by asking whether she was white.

26. Plaintiff said "Wakanda Forever." Officer Isaac demanded to know who said it. When Plaintiff identified herself, he called her a "stupid crackhead."

27. This racially charged exchange immediately preceded the escalation of force.

## C. The Assault and Use of Force

28. Minutes later, Officer Isaac returned to Plaintiff's cell and ordered her to step out.

29. Plaintiff complied, approaching with her hands behind her back, unarmed, non-threatening, and fully compliant.

30. Without provocation or justification, Officer Isaac:

- Snatched Plaintiff,

- Slammed her head against the cell,

- Wrenched her arms above her back, and

- Dragged her across the floor to another cell.

31. Plaintiff repeatedly stated she was pregnant.

32. Despite this, officers forced her to her knees and then to her stomach, placing direct pressure on her abdomen.

33. While Plaintiff was handcuffed and unable to move, Officer Isaac:

- Drove his knee into her back,

- Pulled her handcuffed arms above her head,

- Twisted her leg behind her, and

- Threatened to "shoot [her] if [she] moved."

34. Plaintiff experienced extreme pain, restricted breathing, and nearly lost consciousness.

5

### D. Onset of Bleeding and Denial of Medical Care

35. Following the assault, Plaintiff began spotting and experiencing abdominal pain.

36. Plaintiff requested medical attention and sanitary pads. Officers refused to provide pads and gave her only tissue.

37. Plaintiff called the suicide hotline from her cell out of fear for her safety and the safety of her pregnancy.

38. Officers retaliated, calling her "dramatic," telling her to stop calling Metro, and refusing to summon a supervisor.

39. Plaintiff was denied access to medical staff despite repeatedly reporting pregnancy, bleeding, and pain.

### E. Release From Custody and Immediate Medical Deterioration

40. Plaintiff was released on the morning of September 1, 2025, still in pain and still bleeding. She had received no medical evaluation, no pregnancy assessment, and no sanitary supplies.

41. Immediately after release, Plaintiff sought emergency medical care at Valley Hospital, arriving at 11:45 a.m.—less than 36 hours after the assault.

42. Medical staff diagnosed Plaintiff with **"Threatened Abortion in Early Pregnancy"**, documented declining hormone levels, and advised that she was likely miscarrying.

43. The emergency department noted pregnancy complications consistent with trauma, abdominal pressure, and physical force of the type inflicted upon Plaintiff while she was handcuffed and forced onto her stomach.

### F. Medical Confirmation of Pregnancy Complications and Loss

44. Plaintiff's HCG levels were documented as falling, indicating a non-viable or failing early pregnancy.

45. Plaintiff was instructed to obtain urgent OB/GYN follow-up due to the risk of miscarriage.

6

46. Plaintiff ultimately lost the pregnancy. Her menstrual cycle returned to normal shortly after the incident, consistent with early pregnancy loss.

### G. Internal Investigation and Sustained Findings

47. Plaintiff filed a formal complaint with NLVPD on September 8, 2025.

48. On December 22, 2025, following a full internal investigation, the Chief of Police issued written findings sustaining:

- **3.05.01 – Employee Conduct – SUSTAINED**

- **4.01.05 – De-Escalation – SUSTAINED**

49. The sustained findings confirm that Plaintiff's allegations were supported by "proper and sufficient evidence," constituting an official admission of misconduct.

50. On information and belief, the force used and the denial of medical care were a substantial factor in causing Plaintiff's pregnancy complications and ultimate pregnancy loss.

**VI.**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Excessive Force (Fourteenth Amendment)**
**Against Officer Isaac and Doe Officers**

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 as though fully set forth herein.

52. At all relevant times, Defendants acted under color of state law as employees of the City of North Las Vegas and the North Las Vegas Police Department.

53. Plaintiff was a pretrial detainee, and her rights arise under the Fourteenth Amendment's Due Process Clause, which prohibits the use of objectively unreasonable force against detainees. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

7

54. On August 31, 2025, Plaintiff complied with Officer Isaac's order to exit her cell, approached with her hands behind her back, and posed no threat to any officer or detainee.

55. Without provocation, justification, or need, Officer Isaac violently seized Plaintiff, slammed her head against the cell, wrenched her arms above her back, and dragged her across the floor to another cell.

56. Plaintiff repeatedly informed officers she was pregnant, experiencing abdominal pain, and needed medical attention. Despite this, officers forced her to her knees and then to her stomach, placing direct pressure on her abdomen.

57. While Plaintiff was handcuffed, restrained, and unable to move, Officer Isaac drove his knee into her back, pulled her handcuffed arms above her head, and lifted her leg behind her, causing extreme pain, restricted breathing, and near-loss of consciousness.

58. During the assault, Officer Isaac threatened to shoot Plaintiff if she moved, escalating the force and intimidation used against her.

59. Plaintiff was compliant, non-resistant, unarmed, and physically restrained throughout the encounter. No reasonable officer could believe such force was necessary under the circumstances.

60. The force used against Plaintiff was objectively unreasonable, excessive, and disproportionate to any legitimate governmental interest, in violation of the Fourteenth Amendment.

61. The relationship between the need for force and the amount of force used, the extent of Plaintiff's injuries, the lack of any threat posed by Plaintiff, and the availability of less intrusive alternatives all demonstrate that the force was objectively unreasonable.

62. As a direct and proximate result of Defendants' excessive force, Plaintiff suffered significant physical injuries, including but not limited to:

- abdominal pain and cramping;

- back, shoulder, and arm injuries;

- bruising and soft-tissue trauma;

- restricted breathing and near-syncope;

- pregnancy complications, including spotting and abdominal distress;

- declining hormone levels documented less than 36 hours later;

- a medically diagnosed "Threatened Abortion in Early Pregnancy"; and

- ultimate loss of the pregnancy.

63. Plaintiff also suffered severe emotional and psychological injuries, including:

- fear for her life after being threatened with being shot;

- terror and helplessness while restrained and assaulted;

- emotional trauma associated with pregnancy loss;

- humiliation from being mocked, degraded, and denied care;

- anxiety, depression, and sleep disturbance;

- ongoing fear of law enforcement; and

- loss of sense of safety and bodily autonomy.

64. Plaintiff's injuries required emergency medical evaluation, diagnostic testing, and follow-up care, and she continues to experience physical and emotional effects from the assault.

65. Defendants' actions were willful, malicious, oppressive, and in reckless disregard of Plaintiff's constitutional rights, entitling her to punitive damages against the individual defendants.

///

///

9

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Denial of Medical Care (Fourteenth Amendment)
### Against All Individual Defendants

66. Plaintiff realleges and incorporates by reference paragraphs 1 through 65 as though fully set forth herein.

67. At all relevant times, Defendants acted under color of state law as employees of the City of North Las Vegas and the North Las Vegas Police Department.

68. Plaintiff was a pretrial detainee, and her right to adequate medical care arises under the Fourteenth Amendment's Due Process Clause, which prohibits officers from acting with objective deliberate indifference to a detainee's serious medical needs. *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018).

69. Plaintiff had a serious medical need. She was pregnant, began bleeding while in custody, experienced abdominal pain, and repeatedly informed officers that she required medical attention.

70. Defendants made intentional decisions regarding Plaintiff's medical care. Specifically, Defendants chose to ignore her statements that she was pregnant, refused to provide sanitary pads, denied her access to a nurse or medical staff, and refused to summon medical assistance despite her visible distress and repeated requests.

71. Defendants were aware that Plaintiff was experiencing symptoms consistent with pregnancy complications, including spotting, abdominal pain, and emotional distress, yet they took no reasonable measures to assess, evaluate, or treat her condition.

72. Instead of providing medical care, Defendants mocked Plaintiff, called her "dramatic," told her to stop calling Metro, and retaliated against her for seeking help. Defendants further escalated force against her despite her pregnancy and visible symptoms.

10

73. Defendants' failure to act was objectively unreasonable under the circumstances. A reasonable officer would have understood that a pregnant detainee reporting bleeding and abdominal pain required immediate medical evaluation.

74. Defendants' refusal to provide medical care caused Plaintiff to suffer worsening symptoms, including continued bleeding, pain, emotional trauma, and pregnancy complications.

75. Upon release from custody on the morning of September 1, 2025, Plaintiff remained in pain and continued bleeding. She sought emergency medical care immediately after release, arriving at Valley Hospital at 11:45 a.m., where she was diagnosed with "Threatened Abortion in Early Pregnancy" and documented to have declining hormone levels consistent with pregnancy loss.

76. Defendants' deliberate indifference to Plaintiff's medical needs was a moving force behind her injuries, including physical pain, pregnancy complications, emotional distress, and the deterioration of her medical condition.

77. Defendants' failure to summon medical staff, provide sanitary supplies, or arrange for evaluation was objectively unreasonable in light of Plaintiff's pregnancy, bleeding, and complaints of abdominal pain, and a reasonable officer would have appreciated the high degree of risk involved.

78. As a direct and proximate result of Defendants' deliberate indifference, Plaintiff suffered significant physical injuries and medical consequences, including:

- continued abdominal pain and cramping;

- prolonged and untreated vaginal bleeding;

- worsening pregnancy complications;

- declining hormone levels documented in the emergency department;

- a medically diagnosed "Threatened Abortion in Early Pregnancy";

11

- loss of the pregnancy;

- increased physical suffering due to lack of sanitary supplies; and

- heightened risk of infection and medical instability.

79. Plaintiff also suffered severe emotional and psychological harm, including:

- fear and panic while bleeding in custody without medical care;

- emotional trauma associated with the loss of her pregnancy;

- humiliation from being mocked, ignored, and denied basic hygiene;

- distress from being told she was "dramatic" while experiencing a medical emergency;

- anxiety, depression, and sleep disturbance;

- loss of trust in law enforcement and custodial medical systems; and

- ongoing emotional distress related to the circumstances of her pregnancy loss.

80. Plaintiff required emergency medical evaluation, diagnostic testing, and follow-up care, and continues to experience physical and emotional effects from the denial of medical care.

81. Defendants' conduct was willful, malicious, oppressive, and in reckless disregard of Plaintiff's constitutional rights, entitling her to punitive damages against the individual defendants.

### THIRD CAUSE OF ACTION
#### 42 U.S.C. § 1983 – Equal Protection (Racial Discrimination)
#### Against Officer Isaac

82. Plaintiff realleges and incorporates by reference paragraphs 1 through 81 as though fully set forth herein.

83. The Equal Protection Clause of the Fourteenth Amendment prohibits law enforcement officers from intentionally discriminating against individuals on the basis of race, ethnicity, or perceived racial identity.

12

84. Plaintiff is a member of a protected class and was subjected to racialized comments, hostility, and differential treatment by Defendant Officer Isaac during her detention on August 31, 2025.

85. When Plaintiff asked Officer Isaac whether he was Nigerian, he responded by asking whether she was white. After Plaintiff said "Wakanda Forever," Officer Isaac demanded to know who said it. When Plaintiff identified herself, he immediately called her a "stupid crackhead."

86. Immediately following this racially charged exchange, Officer Isaac escalated the encounter, returned to Plaintiff's cell, ordered her out, and used force that was wholly disproportionate to her behavior, despite her compliance and non threatening posture.

87. Officer Isaac's conduct—including the racialized comments, the hostility that followed, and the decision to use force—was motivated, at least in part, by discriminatory animus based on Plaintiff's perceived race or racial identity.

88. Similarly situated detainees who did not engage in racialized speech or who were not the subject of racial animus were not subjected to comparable verbal abuse, hostility, or gratuitous force.

89. The differential treatment Plaintiff experienced was intentional, purposeful, and not rationally related to any legitimate governmental interest.

90. The escalation of force and differential treatment occurred immediately after and because of the racialized exchange.

91. As a direct and proximate result of Defendant Isaac's discriminatory conduct, Plaintiff suffered significant physical, emotional, and dignitary harms, including:

- physical injuries sustained during the force incident that immediately followed the racialized exchange;

- humiliation and degradation from being targeted with racial hostility while in custody;

13

- emotional distress, fear, and anxiety triggered by the discriminatory treatment;

- heightened psychological trauma due to the intersection of racial abuse, pregnancy, and physical assault;

- loss of dignity and equal treatment under the law; and

- exacerbation of pregnancy related stress and complications.

92. Plaintiff continues to experience emotional and psychological effects from the discriminatory conduct, including anxiety, distrust of law enforcement, and trauma associated with being racially targeted while pregnant and restrained.

93. Defendant Isaac's actions were willful, malicious, oppressive, and in reckless disregard of Plaintiff's constitutional rights, entitling her to punitive damages.

94. Racially motivated force and discriminatory treatment violate the Equal Protection Clause. Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130 (9th Cir. 2003).

**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Retaliation for Protected Speech**
**Against Officer Isaac and Doe Officers**

95. Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as though fully set forth herein.

96. The First Amendment prohibits law enforcement officers from retaliating against individuals for engaging in protected speech, including seeking help, reporting misconduct, requesting a supervisor, or contacting outside authorities.

97. While detained on August 31, 2025, Plaintiff engaged in multiple forms of protected speech, including:

a. Calling the suicide hotline from her cell because she feared for her safety;

b. Attempting to contact Metro to report the officers' conduct;

c. Requesting to speak with a supervisor; and

14

d. Verbally asserting that she was pregnant and needed medical attention.

98. Defendants were aware of Plaintiff's protected speech. Officers responded directly to her calls for help, telling her she was being "dramatic," instructing her to stop calling Metro, and refusing to summon a supervisor.

99. After Plaintiff engaged in this protected speech, Defendants took adverse actions against her, including:

a. Escalating force without justification;

b. Forcing her to her knees and stomach despite her pregnancy;

c. Threatening to shoot her if she moved;

d. Denying her medical care; and

e. Mocking, degrading, and verbally abusing her.

100. These adverse actions would chill a person of ordinary firmness from continuing to engage in protected speech, particularly a detainee who had already been assaulted, threatened, and denied medical care.

101. Defendants' adverse actions were motivated by Plaintiff's protected speech. The escalation of force, denial of care, and retaliatory conduct occurred immediately after Plaintiff attempted to call Metro, requested a supervisor, and asserted her pregnancy and need for medical attention.

102. Defendants would not have escalated force, denied care, or mocked Plaintiff but for her protected speech.

103. Defendants' retaliatory conduct violated Plaintiff's clearly established First Amendment rights, and no reasonable officer could believe such conduct was lawful.

104. As a direct and proximate result of Defendants' retaliation, Plaintiff suffered significant physical, emotional, and constitutional injuries, including:

15

- physical injuries sustained during the retaliatory force incident;

- increased abdominal pain and bleeding due to the retaliatory escalation;

- pregnancy complications documented less than 36 hours later in the emergency department;

- emotional distress, fear, and humiliation from being punished for seeking help;

- trauma associated with being threatened with being shot for asserting her rights;

- psychological harm from being denied a supervisor and mocked for reporting misconduct;

- loss of bodily autonomy and safety while in custody; and

- exacerbation of pregnancy related stress and ultimate pregnancy loss.

105. Plaintiff continues to experience emotional and psychological effects from the retaliatory conduct, including anxiety, fear of law enforcement, and trauma associated with being punished for attempting to protect herself and her pregnancy.

106. Defendants' conduct was willful, malicious, oppressive, and in reckless disregard of Plaintiff's constitutional rights, entitling her to punitive damages against the individual defendants.

107. Retaliation violates the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005).

### FIFTH CAUSE OF ACTION
**Monell Liability – Failure to Train, Supervise, and Discipline**
**Against City of North Las Vegas**

108. Plaintiff realleges and incorporates by reference paragraphs 1 through 107 as though fully set forth herein.

109. The City of North Las Vegas ("CNLV") is liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), because Plaintiff's injuries were caused by the City's policies, customs, practices, and failures in training, supervision, and discipline within the North Las Vegas Police Department and the North Las Vegas Detention Center.

**A. Policy, Custom, or Practice**

16



110. CNLV maintains longstanding customs and practices that permit, encourage, or fail to prevent the use of excessive force, racially discriminatory conduct, and denial of medical care to detainees, including pregnant detainees.

111. These customs include: a. tolerating the use of force against compliant detainees; b. failing to enforce de-escalation requirements; c. failing to train officers on the treatment of pregnant detainees; d. failing to require medical evaluation after force incidents; e. failing to discipline officers for misconduct; and f. allowing officers to retaliate against detainees who request help or attempt to report misconduct.

112. The City's own Internal Affairs findings in Plaintiff's case sustained violations for Employee Conduct and De Escalation, confirming that Officer Isaac's conduct was consistent with known deficiencies in training and supervision.

**B. Failure to Train**

113. CNLV failed to adequately train officers assigned to the North Las Vegas Detention Center on: a. proper use of force on restrained detainees; b. de-escalation techniques; c. recognizing and responding to medical emergencies; d. the care and handling of pregnant detainees; e. when to summon medical staff; f. when to involve supervisors; and g. constitutional limits on retaliation for protected speech.

114. These failures were deliberately indifferent to the rights of detainees. The need for such training was obvious given the frequency of force incidents, the vulnerability of pregnant detainees, and the City's own sustained findings in this case.

115. The City's failure to train was a moving force behind Plaintiff's injuries, including the excessive force used against her, the denial of medical care, and the retaliation she experienced after attempting to call Metro and request a supervisor.

///

17

**C. Failure to Supervise and Discipline**

116. CNLV failed to supervise and discipline officers who engaged in misconduct, including excessive force, verbal abuse, retaliation, and denial of medical care.

117. The sustained findings in Plaintiff's case demonstrate that the City's supervisory systems were inadequate and that officers operated without meaningful oversight.

118. The absence of effective supervision and discipline created an environment where officers believed they could act with impunity, including using force on a pregnant detainee, threatening to shoot her, denying medical care, and retaliating for protected speech.

119. This failure to supervise and discipline was a moving force behind the constitutional violations Plaintiff suffered.

**D. Causation**

120. As a direct and proximate result of the City's policies, customs, practices, and failures in training, supervision, and discipline, Plaintiff suffered:

a. physical injuries;

b. pregnancy complications, including bleeding and declining hormone levels;

c. emotional distress and trauma;

d. humiliation; and

e. loss of liberty and constitutional rights.

121. The constitutional violations committed by Officer Isaac and Doe Officers were the foreseeable and predictable result of the City's systemic failures.

**E. Damages Resulting From Monell Violations**

122. As a direct and proximate result of CNLV's unconstitutional policies, customs, and failures, Plaintiff suffered extensive damages, including:

- physical injuries from excessive force;

18

- abdominal trauma and pregnancy complications;

- declining hormone levels documented in the emergency department;

- a medically diagnosed "Threatened Abortion in Early Pregnancy";

- loss of the pregnancy;

- prolonged pain and untreated bleeding;

- emotional trauma associated with racial abuse, force, and pregnancy loss;

- humiliation from being denied medical care and mocked while in distress;

- psychological injuries including anxiety, depression, and fear of law enforcement;

- loss of bodily autonomy and safety while in custody; and

- ongoing emotional and physical effects requiring medical and psychological care.

123. Plaintiff seeks compensatory damages, punitive damages against individual officers, attorney's fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

124. These failures were the moving force behind Plaintiff's injuries. City of Canton v. Harris, 489 U.S. 378 (1989).

**SIXTH CAUSE OF ACTION**
**Assault and Battery (Nevada Law)**
**Against Officer Isaac**

125. Plaintiff realleges and incorporates by reference paragraphs 1 through 124 as though fully set forth herein.

126. Under Nevada law, assault is an intentional act that places another in reasonable apprehension of immediate harmful or offensive contact. Battery is an intentional and unjustified touching of another in a harmful or offensive manner.

127. On August 31, 2025, while Plaintiff was detained at the North Las Vegas Detention Center, Defendant Officer Isaac intentionally engaged in conduct designed to place Plaintiff in fear of

19

imminent physical harm, including yelling at her, ordering her out of her cell without justification, and threatening to shoot her if she moved.

128. Officer Isaac's threat to shoot Plaintiff, made while she was handcuffed, restrained, and unable to defend herself, placed Plaintiff in reasonable apprehension of immediate and severe bodily harm, constituting assault under Nevada law.

129. Officer Isaac then intentionally made harmful and offensive physical contact with Plaintiff by: a. snatching her and slamming her head against the cell; b. wrenching her arms above her back while handcuffed; c. dragging her across the floor; d. forcing her onto her knees and then onto her stomach despite her pregnancy; e. driving his knee into her back; and f. pulling her leg behind her while she was restrained.

130. This physical contact was unwanted, unjustified, excessive, and carried out with the intent to harm, intimidate, or punish Plaintiff, constituting battery under Nevada law.

131. Plaintiff did not consent to any of the physical contact described above.

132. A reasonable officer would have known that using such force on a compliant, handcuffed, pregnant detainee was unlawful, unnecessary, and dangerous.

133. As a direct and proximate result of Defendant Isaac's assault and battery, Plaintiff suffered significant physical injuries, including:

- abdominal pain and cramping;

- back, shoulder, and arm injuries;

- bruising and soft tissue trauma;

- restricted breathing and near syncope;

- pregnancy complications, including spotting and abdominal distress;

- declining hormone levels documented less than 36 hours later;

- a medically diagnosed "Threatened Abortion in Early Pregnancy"; and

20

- ultimate loss of the pregnancy.

134. Plaintiff also suffered severe emotional and psychological injuries, including:

- fear for her life after being threatened with being shot;

- terror and helplessness while restrained and assaulted;

- emotional trauma associated with pregnancy loss;

- humiliation from being mocked and degraded;

- anxiety, depression, and sleep disturbance;

- loss of trust in law enforcement; and

- ongoing emotional distress related to the assault and its consequences.

135. Plaintiff required emergency medical evaluation, diagnostic testing, and follow up care, and continues to experience physical and emotional effects from the assault and battery.

136. Defendant Isaac's conduct was willful, wanton, malicious, oppressive, and carried out in conscious disregard of Plaintiff's rights and safety, entitling her to punitive damages.

### SEVENTH CAUSE OF ACTION
#### Negligence / Negligent Training & Supervision
#### Against City of North Las Vegas

137. Plaintiff realleges and incorporates by reference paragraphs 1 through 136 as though fully set forth herein.

138. Under Nevada law, the City of North Las Vegas ("CNLV") owes detainees a duty of reasonable care in the hiring, training, supervision, and retention of its law enforcement and detention personnel.

139. CNLV breached this duty by failing to properly hire, train, supervise, and discipline officers assigned to the North Las Vegas Detention Center, including Defendant Officer Isaac and Doe Officers.

140. Reasonable care required CNLV to ensure that its officers were trained in:

21

a. proper use of force on restrained detainees;

b. de-escalation techniques;

c. recognizing and responding to medical emergencies;

d. the care and handling of pregnant detainees;

e. when to summon medical staff;

f. when to involve supervisors; and

g. lawful limits on threats, intimidation, and retaliation.

141. CNLV knew or should have known that its officers routinely interacted with vulnerable detainees, including pregnant women, and that inadequate training or supervision created a foreseeable risk of serious harm.

142. CNLV failed to exercise reasonable care in supervising officers who engaged in misconduct, including excessive force, racial harassment, retaliation, and denial of medical care.

143. The sustained findings issued by the Chief of Police in Plaintiff's case—confirming violations of Employee Conduct and De Escalation—demonstrate that CNLV's training and supervisory systems were inadequate and that officers operated without meaningful oversight.

144. CNLV's negligent hiring, training, supervision, and retention of its officers created an environment where misconduct was foreseeable, predictable, and preventable.

145. As a direct and proximate result of CNLV's negligence, Plaintiff was subjected to excessive force, threats, denial of medical care, retaliation, and discriminatory treatment while pregnant and in custody.

146. As a direct and proximate result of CNLV's negligent hiring, training, supervision, and retention, Plaintiff suffered significant physical injuries, including:

- abdominal trauma and cramping;

- back, shoulder, and arm injuries;

22

- bruising and soft tissue damage;

- restricted breathing and near syncope;

- pregnancy complications, including spotting and abdominal distress;

- declining hormone levels documented in the emergency department;

- a medically diagnosed "Threatened Abortion in Early Pregnancy"; and

- ultimate loss of the pregnancy.

147. Plaintiff also suffered substantial emotional and psychological injuries, including:

- fear for her life after being threatened with being shot;

- trauma associated with being assaulted while pregnant;

- emotional distress from untreated bleeding and medical neglect;

- humiliation from being mocked and denied care;

- anxiety, depression, and sleep disturbance;

- loss of trust in law enforcement and custodial medical systems; and

- ongoing emotional distress related to the circumstances of her pregnancy loss.

148. Plaintiff required emergency medical evaluation, diagnostic testing, and follow up care, and continues to experience physical and emotional effects from the City's negligence.

149. Plaintiff is entitled to compensatory damages, including medical expenses, pain and suffering, emotional distress, and all other damages permitted under Nevada law.

## EIGHTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress (IIED)
### Against Officer Isaac and Doe Officers

150. Plaintiff realleges and incorporates by reference paragraphs 1 through 149 as though fully set forth herein.

151. Under Nevada law, a defendant is liable for intentional infliction of emotional distress when:

23

- the defendant engages in extreme and outrageous conduct;

- intended to cause, or done with reckless disregard for causing, emotional distress;

- the plaintiff suffers severe emotional distress; and

- the defendant's conduct is the actual and proximate cause of that distress.

152. Defendant Officer Isaac's conduct—including racial harassment, threats of being shot, violent assault on a pregnant detainee, denial of medical care, and retaliation for protected speech—constitutes extreme and outrageous conduct that exceeds all bounds of decency tolerated in a civilized society.

153. Doe Officers I–X further contributed to this extreme and outrageous conduct by participating in the assault, failing to intervene, mocking Plaintiff, denying her medical care, and retaliating against her for seeking help.

154. Defendants acted intentionally or with reckless disregard for the probability of causing Plaintiff severe emotional distress. Defendants knew Plaintiff was pregnant, bleeding, terrified, and physically restrained, yet escalated force, threatened lethal violence, and denied medical care.

155. Defendants' conduct was malicious, oppressive, and undertaken with conscious disregard for Plaintiff's physical safety, emotional well-being, and pregnancy.

156. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional and psychological injuries, including:

- terror and panic from being threatened with being shot while handcuffed;

- emotional trauma from being assaulted while pregnant;

- distress from untreated bleeding and medical neglect;

- humiliation from being mocked, degraded, and ignored;

- grief and emotional devastation associated with pregnancy loss;

24

- anxiety, depression, and sleep disturbance;

- fear of law enforcement and custodial environments; and

- ongoing emotional distress requiring continued care.

157. Plaintiff's emotional distress was severe, debilitating, and far beyond what a reasonable person could be expected to endure.

158. Defendants' conduct was a substantial factor in causing Plaintiff's emotional injuries, and the harm was foreseeable given the circumstances.

159. Defendants' actions were willful, wanton, malicious, oppressive, and carried out in conscious disregard of Plaintiff's rights and safety, entitling her to punitive damages.

**NINTH CAUSE OF ACTION**
**Violation of Nevada Constitution, Article 1, Section 9**
**(Cruel or Unusual Punishment)**
**Against Officer Nimi Isaac and Doe Officers I–X**

160. Plaintiff realleges and incorporates by reference paragraphs 1 through 159 as though fully set forth herein.

161. Article 1, Section 9 of the Nevada Constitution prohibits cruel or unusual punishment and is a self-executing provision that provides a direct cause of action for damages under *Mack v. Williams,* 522 P.3d 434 (Nev. 2022).

162. The protections of Article 1, Section 9 apply to individuals held in state custody, including pretrial detainees, and prohibit abusive, degrading, excessive, or punitive treatment by state officers.

163. Defendants violated Article 1, Section 9 when they used gratuitous, abusive, and punitive force on Plaintiff while she was handcuffed, compliant, and pregnant, including slamming her head, wrenching her arms, forcing her onto her stomach, driving a knee into her back, twisting her limbs, and threatening to shoot her if she moved.

*Hood v. City of North Las Vegas,* Civil Rights Complaint

164. Defendants further violated Section 9 by denying Plaintiff medical care despite her pregnancy, bleeding, and repeated requests for help, and by mocking, degrading, and retaliating against her for seeking assistance.

165. Defendants' conduct constitutes cruel or unusual punishment within the meaning of Article 1, Section 9.

166. As a direct and proximate result of Defendants' violations of Article 1, Section 9, Plaintiff suffered:

- physical injuries including abdominal trauma, bruising, and restricted breathing;

- pregnancy complications including spotting, abdominal pain, and declining hormone levels;

- a medically diagnosed "Threatened Abortion in Early Pregnancy";

- ultimate loss of the pregnancy;

- emotional distress, fear, humiliation, and trauma; and

- deprivation of constitutional rights guaranteed by the Nevada Constitution.

### TENTH CAUSE OF ACTION
**Violation of Nevada Constitution, Article 1, Section 8**
**(Due Process)**
**Against Officer Nimi Isaac and Doe Officers I–X**

167. Plaintiff realleges and incorporates by reference paragraphs 1 through 166 as though fully set forth herein.

168. Article 1, Section 8 of the Nevada Constitution guarantees due process of law and is a self-executing provision that supports a damages remedy under the framework established in *Mack v. Williams*, 522 P.3d 434 (Nev. 2022).

169. The due process protections of Article 1, Section 8 apply to pretrial detainees and prohibit arbitrary, abusive, punitive, or unreasonable conduct by state officers.

26

170. Defendants violated Plaintiff's due process rights by using objectively unreasonable force against her while she was a pretrial detainee, including slamming her head, wrenching her arms, forcing her onto her stomach, driving a knee into her back, twisting her limbs, and threatening to shoot her if she moved.

171. Defendants further violated Plaintiff's due process rights by denying her medical care despite her pregnancy, bleeding, abdominal pain, and repeated requests for help.

172. Defendants also retaliated against Plaintiff for attempting to call Metro, request a supervisor, and seek assistance, conduct that is protected and cannot lawfully be punished under the Nevada Constitution.

173. Defendants' actions were arbitrary, abusive, punitive, and not rationally related to any legitimate governmental interest, thereby violating Article 1, Section 8.

174. As a direct and proximate result of Defendants' violations of Article 1, Section 8, Plaintiff suffered:

- physical injuries including abdominal trauma, bruising, and restricted breathing;

- pregnancy complications including spotting, abdominal pain, and declining hormone levels;

- a medically diagnosed "Threatened Abortion in Early Pregnancy";

- ultimate loss of the pregnancy;

- emotional distress, humiliation, and trauma;

- loss of bodily integrity and liberty interests; and

- deprivation of due process rights guaranteed by the Nevada Constitution.

///

///

///

///

27

### ELEVENTH CAUSE OF ACTION
#### Violation of Nevada Constitution, Article 1, Section 6
#### (Equal Protection)
#### Against Officer Nimi Isaac and Doe Officers I–X

175. Plaintiff realleges and incorporates by reference paragraphs 1 through 174 as though fully set forth herein.

176. Article 1, Section 6 of the Nevada Constitution guarantees equal protection of the laws and is a self-executing provision that supports a damages remedy under the framework established in *Mack v. Williams*, 522 P.3d 434 (Nev. 2022).

177. Defendants violated Plaintiff's equal protection rights when Officer Isaac directed racialized comments toward her, including calling her a "stupid crackhead" immediately after a racially charged exchange, and then escalated force and hostility toward her based on discriminatory animus.

178. Officer Isaac's conduct—including the racialized comments, the hostility that followed, and the decision to use force—was motivated, at least in part, by discriminatory animus based on Plaintiff's perceived race or racial identity.

179. Similarly situated detainees who were not the subject of racial hostility were not treated with comparable aggression, force, or denial of care.

180. Defendants' actions were intentional, discriminatory, and not rationally related to any legitimate governmental purpose, thereby violating Article 1, Section 6 of the Nevada Constitution.

181. As a direct and proximate result of Defendants' violations of Article 1, Section 6, Plaintiff suffered:

- physical injuries resulting from the discriminatory escalation of force;

- emotional distress, humiliation, and trauma associated with racial discrimination;

28

- pregnancy related stress and complications;

- loss of dignity and equal treatment under the law; and

- deprivation of equal protection rights guaranteed by the Nevada Constitution.

## VII.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff BRANDY HOOD respectfully requests that this Court enter judgment in her favor and against all Defendants, jointly and severally, and award the following relief:

1. **General damages** in excess of $75,000.00 for physical pain, emotional distress, humiliation, loss of enjoyment of life, dignitary harm, and all other injuries resulting from the violation of Plaintiff's rights under the United States Constitution and the Nevada Constitution.

2. **Special damages** in excess of $75,000.00, including but not limited to:

    - Past and future medical expenses, including emergency treatment, obstetric care, psychological counseling, and trauma-related therapy;

    - Lost wages and diminished earning capacity resulting from arrest, prosecution, reputational injury, and disruption of employment;

    - Legal expenses incurred in defending against false or unsupported criminal charges;

    - Out-of-pocket litigation costs, including travel between Kansas and Las Vegas for court appearances, attorney consultations, and prosecution-related demands;

    - Costs associated with transportation, missed appointments, and disruption of daily life caused by Defendants' conduct.

3. **Damages for violation of Plaintiff's constitutional rights**, including but not limited to:

    - Retaliation for protected speech;

    - Denial of due process;

    - Excessive force;

29

- Denial of medical care;

- Racially discriminatory treatment;

- Violations of Plaintiff's rights under the First and Fourteenth Amendments and under Article 1, Sections 6, 8, and 9 of the Nevada Constitution.

4. **Punitive damages** against Defendant NIMI ISAAC and all individual Defendants whose conduct was willful, malicious, oppressive, or in reckless disregard of Plaintiff's constitutional and statutory rights.

5. **Nominal damages** recognizing the violation of Plaintiff's constitutional rights pursuant to *Carey v. Piphus*, 435 U.S. 247 (1978).

6. **Statutory damages, attorneys' fees, and costs** pursuant to 42 U.S.C. § 1988 and all other applicable federal and Nevada statutes.

7. **Injunctive relief** against Defendant City of North Las Vegas, including but not limited to:

   - Mandatory retraining of detention and police officers in de-escalation, constitutional policing, and the treatment of pregnant detainees;

   - Implementation and enforcement of body-worn camera policies and public reporting of use-of-force incidents;

   - Internal disciplinary review of involved officers, including supervisory failures contributing to the violations alleged herein.

8. **Declaratory relief** that Defendants' conduct violated Plaintiff's rights under the United States Constitution and the Nevada Constitution.

9. Pre-judgment and post-judgment interest as allowed by law.

10. All costs of suit incurred herein.

11. Any further relief the Court deems just and proper.

*Hood v. City of North Las Vegas*, Civil Rights Complaint

## VIII.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff BRANDY HOOD hereby

demands a trial by jury on all issues so triable.

Dated this _5_ day of February 2026.

Respectfully submitted by,

*Carl E. G. Arnold*

CARL E.G. ARNOLD, ESQ.
Nevada Bar No. 8358
1771 E Flamingo Rd #211B
Las Vegas, NV 89119
Carl@cegalawgroup.com
702-253-6996
*Attorney for Plaintiff*

*Hood v. City of North Las Vegas*, Civil Rights Complaint